IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02651-NYW-SBP

PROKASRO SERVICES USA, INC.,

    Plaintiff,

v.

DHL EXPRESS (USA), INC. d/b/a DHL EXPRESS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on DHL Network Operations (USA), Inc.'s Motion for Summary Judgment Related to the Limitation of Liability Provision of the Parties' Contract (the "Motion" or "Second Motion for Summary Judgment"). [Doc. 44]. For the reasons set forth below, the Second Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

In 2023, Plaintiff ProKASRO Services USA, Inc. ("Plaintiff" or "ProKASRO"), through a third party, hired Defendant DHL Express (USA), Inc. ("Defendant" or "DHL")[1] to ship Plaintiff's robotics equipment from Denver, Colorado to Bogotá, Colombia. [Doc.

---

[1] Throughout this case, Defendant has identified itself as "DHL Network Operations (USA), Inc." and stated that it is "improperly designed [sic] as DHL Express (USA), Inc. d/b/a DHL Express." *See* [Doc. 31 at 1; Doc. 44 at 1]. In the Court's February 10, 2025 Memorandum Opinion and Order, the Court instructed that "[t]o the extent Defendant is not properly named, one or both of the Parties must file a motion to amend the case caption after conferral." [Doc. 40 at 1 n.1]. No Party has filed a motion to amend the case caption.

1 at ¶¶ 6–10]. After the equipment was delivered to DHL but before it was moved, ProKASRO canceled the shipment, directed DHL to not ship the equipment to Bogotá, and asked that the shipment be held in Denver. [*Id.* at ¶¶ 13–18, 27–30]. However, the shipment was nevertheless sent to Bogotá, was seized by Colombian authorities, and is considered lost. [*Id.* at ¶¶ 34–35, 37, 66].

ProKASRO initiated this action against DHL on October 11, 2023, asserting four claims: (1) negligence; (2) conversion; (3) civil theft under Colo. Rev. Stat. § 18-4-405; and (4) a "fourth alternative claim for relief" under the Warsaw Convention. [*Id.* at ¶¶ 40–66]. After discovery, both Parties moved for partial summary judgment in their favor. Plaintiff sought partial summary judgment in its favor on its negligence and conversion claims. [Doc. 30 at 10]. Defendant sought summary judgment in its favor on Plaintiff's negligence, conversion, and civil theft claims on the basis that they are preempted by the Montreal Convention, the Airline Deregulation Act, and the Federal Aviation Administration Authorization Act. [Doc. 31 at 4–10]. In the alternative, Defendant moved for summary judgment on the civil theft claim. [*Id.* at 10–11].

The Court ruled on the cross motions on February 10, 2025. [Doc. 40]. The Court denied Defendant's motion, first ruling that the Montreal Convention is inapplicable to this case and does not preempt any of Plaintiff's claims. [*Id.* at 9–17]. Similarly, it concluded that DHL had not met its burden to demonstrate that any claims were preempted by federal statute. [*Id.* at 17–22]. The Court denied Defendant's request for summary judgment on Plaintiff's civil theft claim, concluding that a jury could find in Plaintiff's favor on that claim. [*Id.* at 22–25]. As for Plaintiff's request for summary judgment, the Court concluded that Plaintiff had demonstrated that summary judgment in its favor was

appropriate as to liability on its negligence and conversion claims, [*id.* at 25–28], but it also found that questions surrounding the applicability of certain liability limits contained in the air waybill precluded the Court from entering judgment in the amount requested by Plaintiff, [*id.* at 28–30].

The Court set a status conference to set this case for trial and instructed the Parties to meet and confer about whether the potential liability limits amounted to a question of fact for a jury or a question of law for the Court. [*Id.* at 30–31]. After hearing the Parties' respective positions and supporting arguments, the Court found that the outstanding issue was a legal one and granted Defendant leave to file a second summary judgment motion addressing application of the liability limits. [Doc. 43 at 2]. On April 4, 2025, DHL filed its Second Motion for Summary Judgment. [Doc. 44]. The Motion is fully briefed. *See* [Doc. 45; Doc. 48].

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see*

3

*also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. May 2025 update) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or a denial of an opponent's allegations" to defeat summary judgment). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The following facts are drawn from the summary judgment record, are limited to the precise issue before the Court, and are undisputed unless otherwise noted:

1. ProKASRO contracted with third party TQL Global, LLC ("TQL") to broker the shipment of its robotic equipment (the "Cargo") from Denver to Bogotá, with TQL "acting as the export agent for Plaintiff." [Doc. 44 at ¶ 1; Doc. 45 at ¶ 1; Doc. 1 at ¶¶ 8–9; Doc. 44-1 at 2].

2. TQL hired DHL to transport the Cargo. [Doc. 44 at ¶ 1; Doc. 45 at ¶ 1; Doc. 37-1 at ¶ 7].

3. The Cargo had a gross weight of 630 kilograms and a chargeable weight of 936 kilograms. [Doc. 44 at ¶ 1; Doc. 45 at ¶ 1; Doc. 44-1 at 2].

4. The shipment's waybill provides that the shipment is "SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF" and states that "THE SHIPPER'S ATTENTION IS DRAWN TO THE NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY." [Doc. 44 at ¶ 2; Doc. 45 at ¶ 2; Doc. 44-1 at 4].

5. The waybill also states that "[f]or carriage to which the Montreal Convention does not apply, Carrier's liability limitation for cargo lost, damaged or delayed shall be 22 SDRs per kilogram unless a greater per kilogram monetary limit is provided in any applicable Convention or in Carrier's tariffs or general conditions of carriage." [Doc. 44 at ¶ 2; Doc. 45 at ¶ 2; Doc. 44-1 at 5].

6. An "SDR," or "Special Drawing Right," is an international reserve asset created by the International Monetary Fund to supplement the official reserves of its member countries. [Doc. 44 at ¶ 4; Doc. 45 at ¶ 4].[2]

7. The waybill did not contain a declared value for carriage or declared value for customs. [Doc. 44 at ¶ 2; Doc. 45 at ¶ 2;[3] Doc. 44-1 at 4].

## ANALYSIS

DHL argues that its liability is limited by the waybill's limited liability provisions, which state that the carrier's liability limitation is "22 SDRs per kilogram." [Doc. 44 at 4–5; Doc. 44-1 at 5]. ProKASRO disagrees, arguing that the limited liability provisions are inapplicable and that it is entitled to recover the Cargo's full value. [Doc. 45 at 2–5].

---

[2] *See Armstrong v. Hawaiian Airlines, Inc.*, 416 F. Supp. 3d 1030, 1040 (D. Haw. 2019); Fed. R. Evid. 201(b)(2) (the Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Special Drawing Rights (SDR)*, International Monetary Fund, https://www.imf.org/en/About/Factsheets/Sheets/2023/special-drawing-rights-sdr (last visited September 8, 2025).

[3] Plaintiff states that it "[a]dmit[s] only that the referenced Waybill contains the referenced language among other provisions." [Doc. 45 at ¶ 2]. However, Plaintiff does not deny that the waybill lacks a claimed value. *See* [*id.*]. Accordingly, the Court deems this fact undisputed. *See* Fed. R. Civ. P. 56(e)(2).

5

**I.      The Released Value Doctrine**

Federal common law applies to the issue of whether the waybill's liability limits apply here.  See *Hampton ex. rel Hampton v. Fed. Exp. Corp.*, 917 F.2d 1119, 1121 (8th Cir. 1990); *Kemper Ins. Cos. v. Fed. Exp. Corp.*, 252 F.3d 509, 512 (1st Cir. 2001).  Under federal common law, "[a] common carrier may not exempt itself from liability for its negligence; however, a carrier may limit its liability."  *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir. 1984).

The "released value doctrine," which applies "to common carriers of every stripe," *see Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys.*, 235 F.3d 53, 60 (2d Cir. 2000), permits carriers to "limit their liability for injury, loss, or destruction of baggage on a 'released valuation' basis," *Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360, 1365 (9th Cir. 1987) (quoting *Klicker v. Nw. Airlines, Inc.*, 563 F.2d 1310, 1315 (9th Cir. 1977)).  "In exchange for a lower shipping rate, the shipper is deemed to have released the carrier from liability beyond a stated amount."  *Kemper*, 252 F.3d at 512.  Provisions limiting a carrier's liability "limit recovery not only for breach of contract, but also [claims] based on other legal theories, including negligence, bailment, or conversion."  *Nippon Fire & Marine Ins. Co.*, 235 F.3d at 60.

The shipper is bound by the limits of liability "only if (i) [the shipper] has reasonable notice of the rate structure and (ii) [the shipper] is given a fair opportunity to pay a higher rate in order to obtain greater protection."  *Kemper*, 252 F.3d at 512.  "It is not necessary that the carrier explain the option to declare a higher value to the shipper, rather, the carrier must provide only reasonable notice of the opportunity to declare a higher value."  *Pa. Ins. Co. v. Fed. Express Corp.*, No. 8:23-cv-00274, 2024 WL 4008162, at *4–5 (D.

6

Neb. Aug. 30, 2024) (citing *Husman Const. Co. v. Purolator Courier Corp.*, 832 F.3d 459 (8th Cir. 1987)). Similarly, "federal common law has never required actual notice of a carrier's liability limitation." *Deiro*, 816 F.2d at 1366. If the shipper had reasonable notice of the limited liability provision, then the burden shifts to the shipper "to show that it did not have a fair opportunity to purchase greater liability." *King Jewelry, Inc. v. Fed. Exp. Corp.*, 316 F.3d 961, 966 (9th Cir. 2003).

In its Second Motion for Summary Judgment, DHL argues that the waybill's limits of liability are enforceable under *Colorado* law, but it does not make arguments under the released value doctrine. [Doc. 44 at 4–5]. ProKASRO asserts in its Response that federal common law applies in this case, but that the released value doctrine is inapplicable because "DHL has presented no facts addressing . . . [whether] TQL or ProKASRO had reasonable notice of" the liability limits "or the opportunity to obtain alternative coverage." [Doc. 45 at 3]. In its Reply, DHL does not contest Plaintiff's assertion that federal common law governs the applicability of liability limits, asserting instead that "[t]he application of the Declared Value Doctrine [sic] is a non-issue in the present case" because the contents of the waybill provided reasonable notice of the liability limits and gave an opportunity to declare a higher value for the Cargo. [Doc. 48 at 2–3]. The Court addresses these arguments below.

***Notice.*** "The reasonableness of notice is a question of law to be determined by the court." *Welliver v. Fed. Exp. Corp.*, 737 F. Supp. 205, 207 (S.D.N.Y. 1990) (citing *Deiro*, 816 F.2d at 1364). Here, the waybill states that if the Montreal Convention does not apply to the subject carriage, "Carrier's liability limitation for cargo lost, damaged or delayed shall be 22 SDRs per kilogram unless a greater per kilogram monetary limit is

7

provided in any applicable Convention or in Carrier's tariffs or general conditions of carriage." [Doc. 44-1 at 5]. The waybill also states that "Carrier shall, in accordance with the procedures set forth in its general conditions of carriage and applicable tariffs, permit shipper to increase the limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required." [*Id.*]. The waybill's front page conspicuously points out these provisions to the shipper, stating that the Cargo was "accepted . . . for carriage SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF" and expressly directing the shipper's[4] attention to "THE NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY." [*Id.* at 4 (emphasis in original)]. The notice is conspicuously capitalized. [*Id.*].

"Limited liability provisions are prima facie valid if the face of the contract (or, in this case, air waybill) recites the liability limitation and 'the means to avoid it.'" *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1198 (9th Cir. 1999) (quoting *Royal Ins. Co. v. Sea-Land Serv. Inc.*, 50 F.3d 723, 727 (9th Cir. 1995)). In similar cases, courts have concluded that clear language identifying liability limits in an air waybill (or similar contract) is sufficient to give reasonable notice of those limits to the shipper. *See, e.g.*, *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930 (5th Cir. 1997) ("Here, the airbill contained a conspicuous notice on the front directing the customer to the terms and conditions printed on the reverse of the document. This provision provided adequate notice of the easily understood terms on the reverse side."); *Reece v. Delta Air Lines, Inc.*, 731 F. Supp. 1131, 1135 (D. Me. 1990); *King Jewelry, Inc.*, 316 F.3d at 966; *Central

---

[4] It is undisputed that TQL acted as "the export agent for Plaintiff." [Doc. 44 at ¶ 1; Doc. 45 at ¶ 1]. No Party raises agency arguments or suggests that notice to TQL could not constitute notice to Plaintiff.

*Ins. Co., Ltd. V. China Airlines, Ltd.*, No. 02-cv-05075-MJJ, 2004 WL 742916, at *5 (N.D. Cal. Mar. 24, 2004); *Fortune Elite Enters., LLC v. DHL Express (USA), Inc.*, No. 07-cv-00061-FMO, 2007 WL 10130081, at *7 (C.D. Cal. Dec. 28, 2007).

Plaintiff contends that "DHL . . . has only shown that the Air Waybill contains the limiting language in question and that it was in TQL's possession at some point in time," but has not made "any showing that TQL or ProKASRO had reasonable notice of this language at the time of the shipment." [Doc. 45 at 3]. The Court is respectfully unpersuaded by this argument. The plain and clear language of the waybill renders the liability limitations prima facie valid, *Read-Rite Corp.*, 186 F.3d at 1198, and DHL is not required to prove TQL's or ProKASRO's *actual notice* of the liability limits, *Deiro*, 816 F.2d at 1366; *see also Ing v. Am. Airlines*, No. 06-cv-02873-WHA, 2007 WL 420249, at *5 (N.D. Cal. Feb. 5, 2007) ("Neither actual notice nor actual possession of the waybill by the plaintiff is required."). "As long as the airbill plainly and conspicuously gives reasonable notice of the limitation of liability, a customer's failure to read the airbill does not preclude the applicability of the limitation." *N. Cypress Med. Ctr. Operating Co. v. Fedex Corp.*, 892 F. Supp. 2d 861, 869 (S.D. Tex. 2012). Furthermore, to the extent Plaintiff challenges whether TQL was aware of the waybill's language at the time of the shipment, *see* [Doc. 45 at 3], unsupported speculation, conjecture, or surmise are insufficient to defeat summary judgment, *see Jordan v. Dillon Cos.*, 618 F. App'x 926, 929 (10th Cir. 2015); *Bones*, 366 F.3d at 875 ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.").

9

Because the waybill provided conspicuous and clear notice of DHL's liability limits, the Court finds that ProKASRO, through TQL, had reasonable notice of the carrier's liability limits.

***Opportunity to Obtain Greater Protection.*** Because there was reasonable notice of the limited liability provision, the burden shifts to the shipper to show that it did not have a fair opportunity to declare a higher rate to purchase greater protection. *King Jewelry, Inc.*, 316 F.3d at 966; *Kemper*, 252 F.3d at 512. ProKASRO argues that the waybill "calls into question whether alternative coverage was even available; it merely states, "INSURANCE - **if Carrier offers insurance**, and such insurance is requested in accordance with the conditions thereof, indicate amount to be insured." [Doc. 45 at 4 (quoting [Doc. 44-1 at 4])]. Plaintiff argues that "[t]here is no explanation on the Air Waybill . . . regarding the scope or cost of additional coverage," and "[t]he record is devoid of any information regarding DHL's ability to obtain supplemental coverage, when, from whom, at what price, and to what end, and there is similarly no evidence that this information was ever presented to TQL or ProKASRO." [*Id.*]. This argument is not supported by legal authority. *See* [*id.*].

The Court is respectfully unpersuaded by Plaintiff's assertion. First, its focus on a separate insurance box disregards the waybill's plain language informing the shipper that the "[s]hipper may increase [the] limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required." [Doc. 44-1 at 4]; *see also* [*id.* at 5 ("Carrier shall, in accordance with the procedures set forth in its general conditions of carriage and applicable tariffs, permit shipper to increase the limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.")].

10

The waybill provided a space for a declared value of the Cargo, and no value was declared. [*Id.* at 4].

Second, Plaintiff's argument assumes that *DHL* has the burden to demonstrate that ProKASRO had a reasonable opportunity to declare a higher value. Rather, it is *Plaintiff* that bears the burden to show that it *did not* have an opportunity to declare a higher value to obtain additional coverage. *King Jewelry, Inc.*, 316 F.3d at 966; *Read-Rite Corp.*, 186 F.3d at 1198. Plaintiff does not put forth any argument or evidence that could create a genuine dispute of fact on this issue, even though any such evidence would more readily be in Plaintiff's (or TQL's) possession, and Plaintiff's speculative assertions are insufficient to defeat summary judgment. *Jordan*, 618 F. App'x at 929; *Bones*, 366 F.3d at 875; *see also Ing*, 2007 WL 420249, at *6 ("[The shipper] has presented no facts that could show that [the carrier] withheld additional coverage or that its price was unreasonably high, given the market. The language on the front of the waybill stated that the carrier limited its liability and referred the shipper to the reverse side which stated that a higher value could be declared. . . . Additionally, a space to declare a higher value and to calculate the corresponding fee appeared on the face of the waybill.").

The Court finds that ProKASRO has not met its burden to show that it was deprived of a fair opportunity to declare a higher value for the Cargo to obtain additional protection. Accordingly, absent some other exception, the waybill's limited liability limits will apply here.

***The Conversion Exception.*** In the alternative, Plaintiff argues that the Court should hold that the released value doctrine is not applicable to Plaintiff's conversion or civil theft claims. [Doc. 45 at 4]. The so-called "conversion exception" bars application of

11

the released value doctrine in some instances if the carrier has converted the subject property.  *Kemper*, 252 F.3d at 515.  However, the conversion exception only applies "when a carrier has converted the property 'for its own use or gain.'"  *Id.* (quoting *Glickfeld v. Howard Van Lines*, 213 F.2d 723, 727 (9th Cir. 1954)); *cf. Am. Cyanamid Co. v. New Penn Motor Exp., Inc.*, 979 F.2d 310, 315–16 (3d Cir. 1992) ("[N]othing short of intentional destruction or conduct in the nature of theft of the property will permit a shipper to circumvent the liability limitations in a released value provision.").  The party seeking application of the exception "would bear the burden of proof at trial" with respect to the exception.  *Tran Enters., LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010).[5]

Plaintiff argues that the conversion exception applies because "[t]his Court previously made factual findings and conclusions of law that DHL is liable for conversion with respect to the lost cargo."  [Doc. 45 at 4].  According to Plaintiff, "[b]ecause this Court found that DHL converted the cargo, any limitation of liability defense in the Air Waybill fails as a matter of law."  [*Id.* at 5].  DHL responds that the conversion exception is inapplicable because there is no allegation or evidence in this case that DHL converted the Cargo for its own use or gain.  [Doc. 48 at 4].

---

[5] The *Tran Enterprises* case involved the carrier's ability to limit its liability under the Carmack Amendment to the Interstate Commerce Act.  *See* 627 F.3d at 1011.  However, many courts have interpreted the common law released value doctrine and the Carmack Amendment's requirements similarly or identically.  *See, e.g., id.* at 1012 n.2; *Kemper*, 252 F.3d at 514; *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 188 n.13 (S.D.N.Y. 2014).  The Court finds that Plaintiff would have the burden at trial to prove DHL's conversion of the Cargo for its own gain, such that it also bears the burden at summary judgment to establish a genuine issue of material fact as to the applicability of the exception.

The Court respectfully disagrees with Plaintiff's argument.  As an initial matter, for purposes of clarity, this Court has not made any factual findings with respect to Plaintiff's conversion claim, nor could it do so at summary judgment.  Rather, at the first stage of summary judgment, the Court held—based on the undisputed material facts, and Defendant's lack of argument in opposition—that Plaintiff "ha[d] met its burden at summary judgment with respect to the basic elements of its conversion claim," [Doc. 40 at 28], such that Plaintiff would "not be required to prove the elements of liability at trial," [*id.* at 30 (emphasis omitted)].  Plaintiff did not argue then, and does not argue now, that DHL had converted the Cargo for its own gain.  See [Doc. 30; Doc. 45].  Nor has there been any such evidence presented, either now or in the original summary judgment briefing.  In other words, Plaintiff has not established a genuine dispute of material fact as to whether DHL converted the property for its own gain, and it has not met its burden to show that the conversion exception bars application of the released value doctrine as a matter of law.  See *Kemper*, 252 F.3d at 516 (declining to apply the conversion exception where the shipper "made no allegation that [the carrier] appropriated the property itself, or profited from its conversion," so "the claim [did] not fit within the doctrine").[6]

In sum, the Court rules as follows:  (1) as a matter of law, Plaintiff (through TQL) had reasonable notice of the liability limits; (2) Plaintiff has not demonstrated a genuine dispute of material fact suggesting that it did not have a fair opportunity to declare a higher

---

[6] Because Plaintiff's argument that Colorado public policy should bar application of the liability limits is made in the alternative "assuming . . . that Colorado law applies here," [Doc. 45 at 5], and because the Court finds that federal common law applies to the liability limit issue, the Court need not address this argument.

13

value; and (3) the conversion exception does not apply. Accordingly, the released value doctrine applies in this case. And because it is undisputed that TQL did not declare a higher value for the Cargo in the waybill, [Doc. 44 at ¶ 2; Doc. 45 at ¶ 2; Doc. 44-1 at 4], the limitations of liability contained in the waybill limit Defendant's liability and Plaintiff's recovery.

## II.     Calculation of the Liability Limit

Having decided that the waybill's liability limits apply in this case, the Court must determine the proper calculation of those limits. Applying the applicable SDR rate at the date it filed its Motion (1 SDR = $1.339140), DHL argues that "the limit of Plaintiff's damages in the present case and under the contract is $27,575.57." [Doc. 44 at ¶ 4; *id.* at 5]. Defendant asks the Court to enter an order "finding as a matter of law that DHL's liability owed to Plaintiff[] is limited to the amount of $27,575.57." [*Id.* at 6]. Defendant does not cite any legal authority demonstrating that the Court should rely on the SDR rate as of the date it filed its Motion. *See* [*id.*]. For its part, Plaintiff does not dispute the then-SDR value, *see* [Doc. 45 at ¶ 4], but it raises no argument about the proper calculation of the liability limits, *see* [*id.*].

Based on the Court's independent research, it appears that courts uniformly calculate the conversion of SDRs into U.S. dollars using the applicable SDR rate on the date of the judgment. *See, e.g.*, *In re Sept. 11 Litig.*, 500 F. Supp. 2d 356, 360 n.4 (S.D.N.Y. 2007); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 779 n.3 (7th Cir. 2008); *Lee v. Air Canada*, 228 F. Supp. 3d 302, 311 n.9 (S.D.N.Y. 2017). The Court is mindful that this practice is employed pursuant to the Montreal Convention, *see, e.g.*, *In re Sept. 11 Litig.*, 500 F. Supp. 2d at 360 n.4; *Lee*, 228 F. Supp. 3d at 311

14

n.9; *see also* Montreal Convention, art. 23, ¶ 1, and the Court has already ruled that the Montreal Convention does not apply in this case, *see* [Doc. 40 at 9–17]. However, given the lack of authority suggesting any other applicable calculation, and because the Court's adoption of this practice would not conflict with or undermine its earlier ruling, the Court will employ the SDR rate at the date of the judgment to calculate the liability limits in this case.

However, outstanding issues preclude the Court's ability to enter judgment at this time. For one, genuine disputes of material fact remain as to Defendant's liability for Plaintiff's civil theft claim. *See* [*id.* at 22–25]. Even with this Court's ruling on liability limits, it is unclear whether Plaintiff intends to proceed to trial to decide Defendant's liability for civil theft. Moreover, Plaintiff's fourth claim under the Warsaw Convention has not been substantively addressed by the Parties or formally disposed of by the Court. Accordingly, it is **ORDERED** that the Parties shall meet and confer prior to the September 18, 2025 Final Pretrial/Trial Preparation Conference to discuss whether this case must still proceed to trial or whether this case can be resolved short of trial given the Court's rulings herein.

Based on the Court's rulings and analysis herein, the Second Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. It is granted to the extent it requests a ruling that the waybill's limited liability provisions apply in this case. It is denied to the extent it seeks a ruling that DHL's liability is limited to $27,575.57.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1) DHL Network Operations (USA), Inc.'s Motion for Summary Judgment Related to the Limitation of Liability Provision of the Parties' Contract [Doc. 44] is **GRANTED in part** and **DENIED in part** to the extent outlined above; and

(2) The Parties shall meet and confer prior to the September 18, 2025 Final Pretrial/Trial Preparation Conference to discuss whether this case must still proceed to trial or whether this case can be resolved short of trial given the Court's rulings herein.

DATED: September 8, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge